BETTY H. PRIVETTE v. WARREN PRIVETTE, SR.

No. 7626DC245

(Filed 4 August 1976)

1. Divorce and Alimony § 4— parties occupying same house — cruel treatment by husband — no condonation by wife

   In an action for alimony *pendente lite*, custody of the minor child, child support and attorney fees, plaintiff did not condone allegedly cruel acts of defendant by remaining in the parties' home, since plaintiff testified that she and defendant had not shared "the same marital bed" for over a year; moreover, the burden of proving the affirmative defense of condonation must be carried by the defendant, and defendant in this case failed to carry such burden.

2. Divorce and Alimony §§ 18, 23, 24— alimony pendente lite — child custody and support — sufficiency of findings

   The trial court's findings with respect to the parties' employment and income were sufficient to support an award of alimony *pendente lite*, but findings of fact with respect to custody and child support were insufficient to support its award.

APPEAL by defendant from *Lanning, Judge*. Judgment entered 20 November 1975 in District Court, MECKLENBURG County. Heard in the Court of Appeals 16 June 1976.

In her verified complaint, the plaintiff wife, alleging (constructive) abandonment and maintaining that defendant husband treated plaintiff and their minor child with considerable cruelty, sought alimony pendente lite, custody of the minor child, child support and attorney fees.

Defendant husband's answer denied the plaintiff's material allegations and maintained that " . . . if the Defendant has committed any indignities to the person of the Plaintiff as alleged in the Complaint, which he denies, such conduct on the part of the Defendant has been condoned by the Plaintiff continuing to live with the Defendant. That at the time this answer is being filed, the Plaintiff continues to live with the Defendant. The Plaintiff has never at any time moved out and ceased living with the Defendant. Defendant, therefore, pleads this condonation to all acts alleged in the Complaint." Furthermore, defendant counterclaimed for custody of the minor child, Amy Elizabeth Privette.

At trial, plaintiff, testifying on her own behalf, recalled the alleged indignities offered by defendant but noted that the de-

fendant had " . . . never threatened [her] and he has never slapped [her]. . . . " She further stated that on " . . . the 17th of September of 1975, Warren came in one hour before we were supposed to be in court and said that he had had an experience with the Lord and that he wanted me to call you [i.e., her attorney] and have the papers destroyed and that he would be a good he would be the best husband and father that I had ever seen, that he would make a Christian home. He had our daughter, Rita, who is a Christian with him at that time. He promised to be a good husband, father, and make a Christian home so that our friends could come back to our home again. The past two years no visitors have been in our home. After September 17, 1975, he has been a better person to Amy. But as far as I am concerned I well, there's just no love. I mean I love Warren as a human being, as God's creation, but he has destroyed all the love that I had for him as a wife. Both before September 17, 1975 and after that date, we have continued to sleep in separate bedrooms."

Plaintiff, on cross-examination, testified that "[i]n the summertime of 1974 my husband spent one night in the house next door. I did not move out of the bedroom until the last of June of 1974. Before I moved out of the family bedroom in June of 1974, we occupied the same bed. I told my husband that up to that time I had never refused him sex any time he wanted it. I am still living in the same house with him and I spent last night there."

At the close of the plaintiff's evidence, the defendant moved for a dismissal and for a judgment as of nonsuit. The motion was denied.

Subsequently, defendant, testifying on his own behalf, stated that but for one evening in the summer 1974, he and his wife " . . . have never been separated . . . . " Moreover, defendant maintained that since he " . . . had the conversation with her about the middle of September that she testified about in the presence of one of my daughters, she has been cooking our meals regular and I have been eating my meals with the family. Things have been better between us since we have had that talk. I would say that conversation that we had in the middle of September lasted about ten minutes. Both of us agreed that we would try to make things work in the future. I told her I'd appreciate it if we would work things out where this baby

could grow up under two parents. She agreed upon it and she immediately called Mr. Roberts. We both agreed that both of us would work together and try to make this a Christian home for the child. My daughter and her we all embraced ourself in the middle of the floor there and we all said prayers together in the middle of the floor and I thought it was all over with we came to an agreement. Since that time I have done my best to be a good husband to her and I have done my best to be a good father to the child." Furthermore, defendant pointed out that he has " . . . never at any time threatened any physical harm or violence to my wife. The child is being properly taken care of in our home now with both my wife and me, in a Christian home with Christian guidance and no profanity and no alcohol. I have consistently paid the full expenses of this child. Whatever the child needed, whether it was food or clothing. . . . "

In its order, the trial court found facts, inter alia, with respect to the parties' financial ability and ". . . that the defendant had rendered indignities to the person of the Plaintiff to render her condition unbearable and intolerable, all without sufficient provocation on the part of the said Plaintiff and is entitled to relief by reason of North Carolina General Statute 50-16.2(7). The Court finds as a fact that the Defendant has cursed the Plaintiff, has accused her of infidelity, has made light of her Christian beliefs and practices and has sought and refused to communicate with the Plaintiff, has embarrassed her in front of other persons causing her great humiliation, has threatened the person of Brenda Privette, the daughter, with a fire poker and has showed favoritism to other persons in the neighborhood over the above his own family and has done all these acts without provocation on the part of the Plaintiff. The Court further finds as a fact that on numerous occasions the defendant would absent himself from the home and would not inform the Plaintiff of his whereabouts and would not come to the home for the meals that were regularly cooked by the Plaintiff, thus causing the Plaintiff to be concerned and worried, all without provocation on the part of the Plaintiff. That the Plaintiff and said minor child born of the union are actually and substantially dependent upon the Defendant for their maintenance and support and are substantially in need of maintenance and support from the Defendant." Moreover, the trial court, though finding both parents fit and proper persons for

purposes of custody, awarded custody of the child to the plaintiff. Based on the foregoing facts, the trial court concluded that the ". . . Defendant rendered indignities to the person of the said Plaintiff to make her life unbearable and intolerable and is entitled to relief as set forth herein." In addition to awarding plaintiff custody of the child, the court awarded plaintiff child support and alimony pendente lite and gave to defendant visitation rights with the child. From the order defendant appealed.

Other facts necessary for decision are set out below.

*James L. Roberts for plaintiff appellee.*

*Lacy W. Blue for defendant appellant.*

MORRIS, Judge.

[1]   Defendant, contending that the trial court erred in denying his motion to dismiss, maintains that plaintiff condoned the acts of defendant. We disagree.

The plaintiff testified that she no longer shared "the same marital bed" with defendant as of June 1974 and in view of this testimony "[t]here is no condonation from the fact that the parties continue to live under the same roof if it affirmatively appears that they do not have sexual intercourse." 1 Lee, N. C. Family Law, § 87, pp. 332-333 (1963). Also see: 27A C.J.S., Divorce, § 61, p. 207; 32 A.L.R. 2d, Condonation of Cruel Treatment as Defense to Action for Divorce or Separation, § 12, pp. 107-176.

One Court, moreover, goes even further, stating that ". . . sexual cohabitation after acts of cruelty cannot be considered as condonation in the sense in which it would be after an act of adultery. The effort to endure unkind treatment as long as possible is commendable; and it is obviously a just rule that the patient endurance by one spouse of the continuing ill treatment of the other should never be allowed to weaken his or her right to relief." *Brown v. Brown,* 171 Kan. 249, 232 P. 2d 603, 605-606 (1951). We consider the reasoning in *Brown* correct and adopt its interpretation of the law in this area.

Moreover, the affirmative defense of condonation must be carried by the defendant. See: *Cushing v. Cushing,* 263 N.C. 181, 139 S.E. 2d 217 (1964). Here, the defendant simply has

not carried this burden. In short, there is no merit to defendant's contention that the evidence indicated condonation as a matter of law.

[2] Defendant next contends that the trial court failed to make sufficient findings of fact with respect to alimony pendente lite, custody and child support.

In its findings of fact, the trial court, in pertinent part, found:

> "5. That the defendant is an able-bodied self-employed person engaged in the upholstery business in a shop located on the premises at 126 Pineville Road, Matthews, North Carolina.
>
> 6. That the Plaintiff is unemployed and in the past had been employed as a nursery teacher with the Matthews Baptist Church and earned for the tax year ending 1972, $1,378.00, and earned $2,420.00 for the tax year 1973 and had earnings of $1,495.00 for the tax year 1974 and the Plaintiff is presently unemployed outside the home and works in the home. The Defendant for a nine-week period for August and September, 1975, had a net profit of $1,391.13, an average income per week of $154.17. The Defendant's net profit for the tax year of December 31, 1974, was $4,376.65.
>
> 7. Based upon the foregoing findings concerning the earnings of the respective Plaintiff and Defendant, the Court finds the fact that the said Plaintiff is a dependent spouse as defined in North Carolina General Statute, Section 15-16.1(3) and the said Defendant is the supporting spouse as defined in North Carolina General Statute, Section 50-16.1(4).
>
> 8. . . . That the Plaintiff and said minor child born of the union are actually and substantially dependent upon the Defendant for their maintenance and support and are substantially in need of maintenance and support from the Defendant.
>
> 9. The Plaintiff and Defendant are both fit and proper persons to have the care, control and custody of the said minor child born of this marriage, to wit: Amy Elizabeth Privette, however, the Court finds the fact that it is in

the best interest of the said minor child, Amy Elizabeth Privette, that she be placed in the exclusive care, control and custody of the said Plaintiff.

10. The Court finds as a fact that the said Defendant, Warren Privette, Sr., is a fit and proper person to have reasonable visitation of the said minor child born of this union, to wit: Amy Elizabeth Privette.

. . .

13. The Court after having found as a fact that the Plaintiff is the dependent spouse and the Defendant is the supporting spouse and the Plaintiff is without means to defray costs of this action, however, in the discretion of the Court, counsel fees are denied Plaintiff's counsel. The Court finds as a fact that the Defendant has earnings and/or an estate from which he can pay reasonable amounts for alimony pendente lite for the Plaintiff and child support."

The court directed defendant to pay to plaintiff $175 per month child support and $125 per month alimony pendente lite and further directed that plaintiff and the child should have the use of one of the houses owned by plaintiff and defendant and that plaintiff should have the exclusive use of one of the automobiles owned by defendant. The court refused to award counsel fees for plaintiff.

Insofar as the defendant contends error with respect to alimony pendente lite, we find no merit to his contention. See: *Eudy v. Eudy,* 288 N.C. 71, 215 S.E. 2d 782 (1975). Cf: *Newsome v. Newsome,* 22 N.C. App. 651, 207 S.E. 2d 355 (1974); *Manning v. Manning,* 20 N.C. App. 149, 201 S.E. 2d 46 (1973). However, we agree with defendant that the findings of fact with respect to custody and child support are insufficient. See: *Powell v. Powell,* 25 N.C. App. 695, 214 S.E. 2d 808 (1975); *Manning v. Manning, supra.*

The order of the trial court is, therefore, affirmed in part and reversed in part. A new hearing is necessary with respect to custody and child support so that proper findings and conclusions thereon may be entered. See *Powell v. Powell, supra.*

Affirmed in part; reversed in part.

Judges VAUGHN and CLARK concur.